543 A.2d 120

INSILCO CORPORATION, a Corporation

v.

Joel T. RAYBURN and Judy A. Rayburn, his wife, Appellants.

INSILCO CORPORATION, a Corporation, Appellant,

v.

Joel T. RAYBURN and Judy A. Rayburn, his wife.

Superior Court of Pennsylvania.

Argued Nov. 6, 1987.

Filed May 16, 1988.

Frank J. Piatek, New Castle, for appellants (at 402) and for appellees (at 797).

James E. Kerr, Butler, for appellant (at 797) and for appellee (at 402).

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

ROWLEY, Judge:

These are consolidated appeals from a summary judgment in mortgage foreclosure and from an order granting two stays of execution on the mortgage foreclosure judgment pending resolution of the appeal from the summary judgment in mortgage foreclosure. We quash the appeal from the summary judgment filed at No. 402 Pittsburgh 1987, and we affirm the order granting the stays of execution appealed at No. 797 Pittsburgh 1987.

On January 9, 1974, Joel and Judy Rayburn (Rayburns) executed an agreement with Miles Homes of Pennsylvania, Inc., the predecessor corporation of Insilco Corporation, the plaintiff herein. (Hereafter, Miles Homes and Insilco shall be referred to simply as "Insilco.") The agreement provided that Insilco would provide the Rayburns with specified materials for building a house for the sum of $12,901.00. It was agreed that the Rayburns would deliver to Insilco a mortgage note which would be secured by an open-ended mortgage upon the Rayburns' "real estate or interest thereon, including that property upon which [the Rayburns] agree[d] to erect" the house.

On June 27, 1975, the Rayburns entered into a land installment sales agreement with Judy Rayburn's mother, Ruth Whipkey (Whipkey), to purchase from Whipkey a certain parcel of land upon which the Rayburns planned to build the house the material for which the Rayburns had previously agreed to purchase from Insilco.

In early to mid September, 1975, at the request of Insilco, Whipkey signed a document stating that she would notify Insilco before taking any legal action to enforce her rights under the land installment sales agreement.

On September 23, 1975, the Rayburns executed a mortgage to Insilco. The mortgage recited that the Rayburns were conveying to Insilco as security for the debt owed to Insilco "all that certain piece, parcel or tract of land" upon which the house was to be built. The mortgage did not recite that the Rayburns were owners in fee of the real estate, nor did it specifically describe the interest which they had in the property. However, the mortgage stated that the Rayburns are "purchasers on an Installment Land Contract dated June 27, 1975, between Ruth E. Whipkey, seller and Joel T. Rayburn and Judy A. Rayburn, husband and wife, buyers, . . . ." Whipkey did not co-sign the mortgage.

In 1982, Insilco commenced a mortgage foreclosure action against the Rayburns and Whipkey because the Rayburns

were in default of the mortgage debt.[1] Separate prelimi-
nary objections were filed by both the Rayburns and Whip-
key. Before the preliminary objections were disposed of by
the court, Whipkey commenced an amicable ejectment ac-
tion against the Rayburns because they were in default on
the land installment sales contract. However, Whipkey did
not inform Insilco that she was taking this legal action to
enforce her interests under the land installment sales agree-
ment with the Rayburns. As a result of the ejectment
action, the Rayburns conveyed their interest in the subject
real estate to Whipkey by quitclaim deed in 1982.[2] Since
then, Judy Rayburn has continued to reside on the subject
real estate, and Insilco has commenced a separate action
against Whipkey and the Rayburns in which it demands full
payment of the unpaid balance on the mortgage note on
theories of implied contract, unjust enrichment and restitu-
tion, civil conspiracy, and illegal use of civil process.

Several years after the Rayburns conveyed their interest
in the real estate to Whipkey by quitclaim deed, the trial
court, in the mortgage foreclosure action, granted the pre-
liminary objections of Whipkey in the nature of a demurrer
and she was dismissed from the action. On motion of
Insilco, summary judgment against the Rayburns was
granted. The Rayburns have appealed from the summary
judgment at No. 402 Pittsburgh 1987.

Following the entry of summary judgment, Insilco com-
menced execution proceedings to foreclose on the property
and have the property sold at a sheriff's sale. Both the

1. The United States of America was also named as a defendant,
apparently because it had filed tax liens against the property. The
United States is not a participant on appeal, and the tax liens are not
in issue in the present appeals.

2. The precise terms of the quitclaim deed and what rights and respon-
sibilities of the Rayburns as mortgagors were transferred to Whipkey
cannot be determined inasmuch as a copy of the deed is not included
in the original record. We recognize that the deed was admitted as an
exhibit at the hearing on the motions for stay of execution as evi-
denced by the list of exhibits in the transcript of the hearing as
included in the reproduced record. However, neither the transcript
of the hearing nor any of the exhibits from the hearing have been
included in the original record certified to this court.

Rayburns and Whipkey filed petitions to stay execution: the Rayburns sought a stay pending appeal, and Whipkey sought a stay pending further hearing. The trial court granted both petitions for stay on the condition that the Rayburns obtain a fire insurance policy on the property for 120% of the amount claimed by Insilco, and on the condition that Whipkey not convey any part of, or interest in, the property during the pendency of the appeal. Insilco filed an appeal from the order granting the stays of execution to both the Rayburns and Whipkey at No. 797 Pittsburgh 1987. The appeal from summary judgment and appeal from the order granting the stays were consolidated.

## I. APPEAL AT 402 PITTSBURGH 1987

In the appeal from the summary judgment in mortgage foreclosure, the Rayburns argue: 1) the trial court erred in granting summary judgment because the only interest the Rayburns ever had in the property was an equitable interest which they conveyed to Whipkey prior to entry of the summary judgment; 2) the trial court did not have subject matter jurisdiction to grant summary judgment because after the action was commenced, but prior to judgment being entered, the Rayburns conveyed their equitable interest in the property to Whipkey, the legal owner of the property who was subsequently dismissed from the action; 3) the trial court erred in failing to sustain the Rayburns' demurrer to the complaint; and 4) the Rayburns have standing to pursue the appeal. Because of our resolution of the standing issue, it is unnecessary for us to address the other issues raised.

The Rayburns argue that they have standing to bring the present appeal despite the fact that they have conveyed their interest in the subject property because if they cannot appeal, there is no one who is a party who could appeal. Insilco contends that the Rayburns do not have standing to appeal because the nature of the summary judgment which was obtained was exclusively *in rem,* and by conveying all of their interest in the real estate to Whipkey, the Rayburns

have stripped themselves of any further interest in the property or the mortgage foreclosure action. In order to resolve the question of standing to appeal, we must first determine the nature of the judgment which has been obtained.

## A. NATURE OF JUDGMENT

An action in mortgage foreclosure is strictly an *in rem* action and may not include an *in personam* action to enforce personal liability. Pa.R.C.P. 1141. The sole purpose of a judgment obtained through mortgage foreclosure is to effect a judicial sale of the mortgaged real estate, *Meco Realty Company v. Burns*, 414 Pa. 495, 200 A.2d 869 (1964), and the judgment obtained in a mortgage foreclosure action is only *in rem*. *First Seneca Bank v. Greenville Distributing Company*, 367 Pa.Super. 558, 533 A.2d 157 (1987). However, where a mortgagee fails to follow Pa.R.C.P. 1141 and includes in a mortgage foreclosure complaint a request not only for an *in rem* judgment of foreclosure on the mortgaged property but also an *in personam* judgment against the individuals who executed the mortgage for their personal liability on the note or bond accompanying the mortgage, the judgment in mortgage foreclosure can be both *in rem* and *in personam* provided that the mortgagor waives any objection to the inclusion of the assumpsit action for a personal judgment in the mortgage foreclosure proceeding. *Kretschman v. Stoll*, 238 Pa.Super. 51, 352 A.2d 439 (1975).

In the present case, the Court's order dated February 17, 1987 did not specify whether the judgment granted was *in rem, in personam,* or both. Rather, it simply provided "the plaintiff's Motion for Summary Judgment is granted." Because the trial court could not have granted more relief than was sought, we must examine the complaint in mortgage foreclosure and the summary judgment motion to determine the nature of the judgment entered. Upon comparison of the facts in the present case with those in *Kretschman,* where the judgment obtained in the mortgage

foreclosure action was determined to be both *in personam* and *in rem,* and by comparison with the facts in *Peoples National Bank of Lebanon,* 338 Pa.Super. 177, 487 A.2d 912 (1985), where the judgment obtained in the mortgage foreclosure action was distinguished from *Kretschman* and held to be only *in rem,* we conclude that the summary judgment obtained in the present case is only *in rem.*

In *Kretschman,* the mortgage foreclosure complaint requested both an *in rem* judgment against the property and an *in personam* judgment against the individuals who had executed the mortgage and the bond underlying it. The complaint was brought upon both the mortgage and the bond, and the prayer for relief requested judgment "against Defendants" in a specified amount, "and for foreclosure and sale of the mortgaged property." The trial court granted both *in rem* and *in personam* relief as requested.

In *Peoples National Bank,* the appellee argued that its judgment in mortgage foreclosure was both *in rem* and *in personam* as in *Kretschman.* However, the court found otherwise. The complaint in *Peoples National Bank* was captioned "Mortgage Foreclosure," and a bond upon which judgment could have been obtained was not mentioned in the complaint. The complaint stated that "the mortgages are in default," and that *"in accordance with the terms and conditions of the mortgages ",* the entire principal was due immediately. The complaint also recited that upon failure to pay the entire amount due, action would be commenced *to foreclose.* Furthermore, the prayer for relief did not specifically request judgment "against Defendants" but only demanded "judgment for the aforesaid amounts, together with collection fees, accrued late charges, costs of suit, etc., and for foreclosure and sale of the mortgaged premises." *Id.,* 338 Pa.Superior Ct. at 181–182, 487 A.2d at 914. Additionally, in the written notice of intention to foreclose, the mortgagee stated "we may *also* sue you personally," and the mortgagee's praecipe for judgment asked that the damages include the balance of the principal of *the mortgage.* Finally, the docket entry did not

indicate that an *in personam* judgment was granted as well as an *in rem* judgment.

A comparison of the facts in the instant case with those in *Kretschman* and *Peoples National Bank* shows that the present case is most like *Peoples National Bank* in which the mortgage foreclosure judgment was held to be only *in rem.* In the instant case, the complaint which was filed by Insilco is captioned "Mortgage Foreclosure" just as in *Peoples National Bank.* Also, as in *Peoples National Bank,* the complaint recites that "notice of intention to accelerate the maturity and to foreclose" was given (paragraph 9), and the complaint recites that "pursuant to the terms of the mortgage and as a result of the aforementioned default ...the whole amount" has become due (paragraph 12). A further similarity with *Peoples National Bank,* is that the complaint nowhere recites any of the terms of the underlying bond, nor attaches it as an exhibit to the complaint, nor requests judgment on the bond; the complaint simply recites "No judgment has been entered on the bond accompanying the mortgage." (paragraph 11). The only similarity of the present case with *Kretschman* and distinction from *Peoples National Bank,* is that the prayer for relief requests "judgment against the defendants Joel T. Rayburn and Judy A. Rayburn, his wife, in the sum of ... [,]a foreclosure of the mortgage premises and a judicial sale thereof."

In addition to the similarities between the present case and *Peoples National Bank,* there are two other factors which must be considered in our analysis of the type of judgment which was entered in this case. First, under the Rules of Civil Procedure governing mortgage foreclosure actions, not only is there a requirement that the action be limited to an *in rem* action, Pa.R.C.P. 1141, but there is also a requirement that the prayer for relief demand judgment for the amount due. Pa.R.C.P. 1147(6). Thus, the effect of the demand for judgment *against the Rayburns* contained in the prayer for relief in the instant case must be considered in light of the other factors which we have enumer-

ated. If there are other factors present which indicate that the mortgagee only intended to seek an *in rem* judgment, then the prayer for relief requesting judgment for the amount due specifically against the Rayburns may be viewed as an inartful attempt to comply with Pa.R.C.P. 1147(6) that a demand for judgment be included in the complaint. However, if the other evidence shows that the mortgagee was in fact trying to combine the *in personam* action with the *in rem* action, then the prayer for relief demanding judgment against the Rayburns specifically may be viewed as a deliberate attempt to obtain a separate *in personam* judgment in the mortgage foreclosure action.

The second additional factor which must be considered is that Insilco asserts repeatedly throughout its appellate brief that the present mortgage foreclosure action is exclusively an *in rem* action and that there can be no *in personam* judgment obtained in it.

■ Considering that Insilco takes the position that only an *in rem* judgment could be obtained in an action for mortgage foreclosure, and that under the rules of Civil Procedure a mortgage foreclosure complaint can only include a cause of action *in rem*, considering that the complaint recites that the only notice given was to seek a mortgage foreclosure, considering that the complaint recites only that the terms of the mortgage, and not the bond, have been breached, considering that the terms of the bond are not recited in or attached to the complaint, and considering that the prayer for relief does not request judgment *on the bond* but simply requests judgment against the Rayburns in an amount equal to the amount due pursuant to the terms *of the mortgage*, we hold that the summary judgment which was granted is only an *in rem* judgment, and does not constitute a personal judgment against the Rayburns on the bond.[3]

---

3. We recognize that in addition to the trial court's order of February 17, 1987 which simply stated that "Plaintiff's Motion for Summary Judgment is granted," Insilco filed a praecipe for judgment directing the Prothonotary to enter judgment in favor of Insilco and against Joel T. Rayburn and Judy A. Rayburn. While there may be some

## B. STANDING

Having concluded that the judgment in the mortgage foreclosure proceeding is only an *in rem* judgment, we must now consider whether or not the Rayburns have standing to pursue the appeal. Rule 501 of the Rules of Appellate Procedure provide that except where a statute enlarges the right to appeal, the only persons who may appeal are: 1) a party who is aggrieved by an appealable order; and 2) a fiduciary whose estate or trust is aggrieved by an appealable order. The Rayburns are not fiduciaries and therefore do not come within the second class of persons who may appeal. Therefore, they have standing to appeal only if they are a party who is aggrieved.

 An aggrieved party is one who has a direct, immediate, pecuniary and substantial interest in the subject matter of the litigation. *Tripps Park Civic Association v. Pennsylvania Public Utility Commission*, 52 Pa.Cmwlth.

question as to whether the court's order was itself the judgment which should have been appealed or whether it was necessary for Insilco to file the praecipe for judgment, we need not decide this issue and do not address it.

First, it is unnecessary for us to decide this issue in order to determine that the appeal was timely because both the trial court's order and the praecipe for judgment were filed within 30 days of the filing of the instant appeal.

Secondly, it is unnecessary for us to decide whether the trial court's order was the "judgment" or whether the judgment entered by the Prothonotary pursuant to the praecipe for judgment was the actual "judgment" in order to determine whether or not the judgment was *in rem, in personam,* or both *in rem* and *in personam.* As discussed in the body of this opinion, the trial court can grant no more than the relief requested by Insilco, and we determined that the only relief requested was an *in rem* judgment. Similarly, judgment can only be entered to the extent that it is provided for in the order pursuant to which judgment is entered.

At first glance, the judgment entered pursuant to Insilco's praecipe might appear to be only an *in personam* judgment since the praecipe directed the Prothonotary to enter only a judgment against the Rayburns. However, the language in the praecipe is identical to that used by Insilco in its complaint. Since we have already considered the language used by Insilco in the complaint along with the other facts of this case and determined that the relief requested and granted by the court was only *in rem* relief, we conclude that the judgment entered by the Prothonotary pursuant to Insilco's praecipe was also only an *in rem* judgment.

317, 415 A.2d 967 (1980); *Matter of Harrison Square, Inc.*, 263 Pa.Super. 324, 397 A.2d 1230 (1979). The Rayburns have given to Whipkey a quitclaim deed conveying any interest they may have had in the real estate. As a result, they no longer have any immediate, direct, pecuniary or substantial interest in the real estate or the *in rem* mortgage foreclosure action. Consequently, we hold that under Pa.R.A.P. 501, the Rayburns are not an "aggrieved party" and do not have standing to bring the present appeal from the *in rem* summary judgment in mortgage foreclosure.

■ If the judgment which was entered was also a judgment *in personam*, we would not hesitate to conclude that the Rayburns have an immediate, pecuniary, substantial and direct interest. Moreover, if it were possible in the mortgage foreclosure action to ascertain the fair market value of the property and thereby obtain a deficiency judgment against the Rayburns personally, we likewise might find that the Rayburns are aggrieved by the summary judgment. However, a deficiency judgment cannot be obtained in a mortgage foreclosure action and can only be brought in an *in personam* action. *Meco Realty Company v. Burns, supra; First Seneca Bank v. Greenville Distributing Company, supra.* Because the Rayburns are not an aggrieved party, they lack standing to pursue the present appeal, and the appeal is therefore quashed.

## II. APPEAL AT NO. 797 PITTSBURGH 1987

Insilco has appealed at this docket number from the trial court's order granting both the Rayburns' petition for stay of execution and sheriff's sale pending appeal on the condition that they obtain a fire insurance policy in an amount equal to 120% of the amount claimed by Insilco, and Whipkey's petition for stay of execution and sheriff's sale pending further hearing. The order appealed from granted two separate stays, one pending appeal, and one pending further hearing. Although Insilco has appealed from the order generally, it makes no argument concerning the stay granted to Whipkey pending further hearing. Therefore, that

portion of the trial court's order granting Whipkey's petition for stay pending further hearing is affirmed.

As to that portion of the trial court's order granting a stay to the Rayburns pending appeal, Insilco makes a two-pronged argument. First, Insilco argues that the trial court abused its discretion in granting the stay under the standards set forth in *Allets, Inc. v. Penn Township Board of Supervisors*, 67 Pa.Cmwlth. 326, 447 A.2d 329 (1982). Secondly, Insilco argues that the substitute security which the trial court approved as a condition of the stay was inadequate.[4]

## A. GRANTING OF STAY

The standards for granting a stay pending appeal are controlled by the Supreme Court's decision in *Pennsylvania Public Utility Commission v. Process Gas Consumers*, 502 Pa. 545, 467 A.2d 805 (1983). In *Pennsylvania Public Utility Commission*, the Supreme Court expressly disapproved of the standards set forth in *Allets*, and held that the grant of a stay is warranted if: 1) the petitioner makes a strong showing that he is likely to prevail on the merits; 2) the petitioner has shown that he will suffer irreparable injury without the requested relief; 3) the issuance of a stay will not substantially harm other parties; and 4) the issuance of a stay will not adversely affect the public interest. However, the decision to grant or deny a stay pending appeal is vested in the trial court's discretion, and will not be reversed absent a clear abuse of that discretion. *In re: Upset Sale, Tax Claim Bureau of Berks Co.*, 505 Pa. 327, 479 A.2d 940 (1984).

■ Although the trial court did not specifically address the factors set forth in *Pennsylvania Public Utility Commission* when it granted the stay to the Rayburns, we nevertheless do not conclude that the granting of the Ray-

---

4. While we express no opinion on the matter, we note that although Insilco has argued that the Rayburns lacked standing to pursue the appeal from the summary judgment, Insilco has not argued that the Rayburns lacked standing to seek a stay of the execution.

;

burns' petition for a stay was an abuse of the trial court's discretion. First, as the trial court noted in its order granting the stays, there was "considerable confusion concerning the status of the property." The likelihood of the Rayburns succeeding on the merits on appeal could not be readily ascertained as a result of the confusion noted by the trial court. Moreover, although we found it unnecessary to reach the merits of the issues raised by the Rayburns, we cannot say that they raised insignificant issues. See *Pennsylvania Public Utility Commission v. Process Gas Consumers, Id.,* 502 Pa. at 554, 467 A.2d at 809. Secondly, should the Rayburns have prevailed on appeal, the failure to obtain the stay would have resulted in a substantial, irreparable loss to them, i.e., the loss of the actual real estate in question. Third, while the granting of the stay would delay Insilco's obtaining satisfaction of its judgment, presuming that Insilco would prevail on appeal, Insilco would nevertheless be able to satisfy its judgment by selling the property and recovering money damages for the delay in the sale of the property. Finally, because this is a dispute between private parties, there is no substantial public interest to be affected by either the grant or denial of the stay. Considering all of these factors, we conclude that the trial court did not abuse its discretion in granting the Rayburns' petition for a stay.

## B. AMOUNT OF SECURITY

■ The final issue that we must discuss, therefore, is whether or not the amount of security required by the trial court as security pending appeal was sufficient. Pa.R.A.P. 1733(b) sets forth the requirements for a supersedeas in a mortgage foreclosure action as follows:

(b) **Tangible property.** When the order determines the disposition of the property in controversy as in real actions, replevin, and actions to foreclose mortgages or when such property is in the custody of the sheriff, or when the proceeds of such property or appropriate security for its value is in the possession, custody or control of

the court, the amount of the additional security shall be fixed by agreement of the parties, or by the court, at such sums only as will secure any damages for the use and detention of the property, interest, the costs of the matter and costs on appeal.

Insilco contends that the requirement that the Rayburns obtain a fire insurance policy in the amount of 120% of the amount claimed by Insilco to be due to it is inadequate because: 1) the policy does not provide security for the costs of the proceeding; 2) the policy does not provide security for the Rayburns' detention of the property during the appeal; and 3) the policy has questionable validity when the Rayburns claim to have no insurable interest.

At the hearing on the petitions for stays, Insilco presented no evidence concerning the estimated costs of the appeal nor an estimate as to the damages which would be necessary for detention of the property should it prevail on appeal. Furthermore, while the amount of the mortgage foreclosure was stated to be $26,225.92, Whipkey, the present legal owner of the real estate, testified that the value of the property was $75,000. Insilco presented no evidence to the contrary. Thus, on the facts before the trial court, the property itself secured nearly three times the amount claimed by Insilco. Since no evidence was presented to show that costs and damages might exceed the value of the property, the court did not abuse its discretion in refusing to order a separate bond as security for costs and damages. Furthermore, inasmuch as Rule 1733(b) authorizes the court to order security only for "damages for the use and detention of the property, interest, the costs of the matter and costs on appeal," and inasmuch as Insilco failed to establish any value as to the items for which the court could order security, even if the insurance policy obtained by the Rayburns is unenforceable because the Rayburns do not have an insurable interest, we conclude that the trial court did not abuse its discretion in granting the Rayburns' stay especially in light of the Rayburns' *in forma pauperis* status.

The appeal at No. 402 Pittsburgh 1987 is quashed. The order appealed at No. 797 Pittsburgh 1987 granting a stay of execution pending appeal and a stay of execution pending further hearing is affirmed.