582 A.2d 648

**In re ESTATE OF Mildred E. HARTMAN, Deceased.**

**Appeal of Floyd HARTMAN.**

**In re ESTATE OF Mildred E. HARTMAN, Deceased.**

**Appeal of Benjamin M. QUIGG, Jr. and Jean F. Doan, Executors of the Estate of Mildred E. Hartman.**

Superior Court of Pennsylvania.

Argued May 23, 1990.

Filed Sept. 10, 1990.

Reargument Denied Nov. 19, 1990.

determine the propriety of the trial court's remaining grounds for dismissal.

Julia H. McLauaghlin, Philadelphia, for appellant (at 2509) and participating party (at 3037).

Thomas W. Murrell, III, Philadelphia, for appellants (at 3037) and participating party (at 2509).

Before WIEAND, McEWEN and HUDOCK, JJ.

HUDOCK, Judge:

These consolidated appeals are from final orders of the Court of Common Pleas of Montgomery County, one ordering Floyd G. Hartman, ("Hartman"), to vacate the residence owned by the estate of Mildred E. Hartman, and one granting a stay of said order pending appeal. We affirm the order to vacate and vacate the order granting a stay.

Mildred E. Hartman, (the "decedent"), died testate on September 29, 1988, survived by Hartman, her second husband. A codicil to the decedent's will provided that Hartman was permitted to continue residing in the home owned by the decedent for six months following her death. After the six months had passed, the codicil directed that the house and its contents were to be sold by the executors of her estate, ("the Executors").

On March 30, 1989, the Executors filed a petition requesting that Hartman be ordered to vacate the premises so that it could be sold in conformity with the instructions in the codicil to the will. On June 19, 1989, a hearing was held on the petition to vacate. As part of their case in chief, the Executors entered into evidence an antenuptial agreement

signed by the decedent and Hartman on March 23, 1970. According to this agreement, the parties each waived, relinquished and released all rights against the estate of the other by reason of their marriage. The agreement also explicitly stated that each party had made a complete disclosure to the other of his or her financial condition and that each had the benefit of legal advice prior to its execution. At the hearing Hartman wished to testify that the antenuptial agreement was invalid. The trial court, however, disqualified such testimony pursuant to the Dead Man's Act, 42 Pa.C.S.A. § 5930.

By Opinion and Order dated August 16, 1989, the trial court held the antenuptial agreement valid and directed Hartman to vacate the property consistent with the decedent's last will and testament, taking one-half of the proceeds upon the sale of the home. On September 14, 1989, Hartman filed a Notice of Appeal from this Order, as well as an Application for Stay of the Lower Court Order Pending Appeal. On October 11, 1989, the trial court granted Hartman's Application for Stay. On November 9, 1989, the Executors filed a Notice of Appeal of the October 11 stay order. By stipulation of the parties and approval of this court, the two appeals were consolidated for argument.

Hartman first claims that the trial court erred in upholding the validity of the antenuptial agreement. He claims that the agreement is invalid due to its failure to contain a reasonable provision for him, the lack of full and fair disclosure, the absence of a knowing waiver of statutory rights, fraud, and failure of consideration.

■ It is well-settled law in Pennsylvania that an antenuptial agreement is presumptively valid and binding upon the parties thereto. *In re Hillegass Estate*, 431 Pa. 144, 150, 244 A.2d 672, 675 (1968). In *Hillegass Estate, supra,* the Pennsylvania Supreme Court set forth the heavy burden a party seeking to invalidate an antenuptial agreement must carry:

The person seeking to nullify or avoid or circumvent the Agreement has the burden of proving the invalidity of

the Agreement by clear and convincing evidence that the deceased spouse at the time of the Agreement made neither (a) a reasonable provision for the intended spouse, nor (b) a full and fair disclosure of his (or her) worth. *Id.*, 431 Pa. at 144, 244 A.2d at 675.

In the recently decided *Simeone v. Simeone*, 380 Pa.Super. 37, 551 A.2d 219 (1988), *app. granted*, 522 Pa. 584, 559 A.2d 528 (1989), this court, citing the plurality opinion of the Pennsylvania Supreme Court in *Estate of Geyer*, 516 Pa. 492, 533 A.2d 423 (1987), explained that the *Hillegass* test provides that if either (but not necessarily both) of the above requirements are met the antenuptial agreement is valid. More importantly, in *Simeone* this court held that the concept of full and fair disclosure encompasses not only disclosure of assets but also disclosure of statutory rights. Thus, to prove the antenuptial agreement invalid in this case, Hartman had the burden of showing by clear and convincing evidence that at the time of the agreement the decedent made neither a reasonable provision for him, nor a full and fair disclosure of her worth and the statutory rights being waived.

The antenuptial agreement at issue did not contain a provision for Hartman; as stated above, the agreement merely stated the parties' desire to prevent their rights, arising from their marriage, from interfering with their individual properties and their estates. Thus, the antenuptial agreement at issue is valid only if a full and fair disclosure of the decedent's financial condition and the statutory rights being waived by Hartman was made.

At the June 19 hearing on the petition to vacate, Hartman called the scrivener of the agreement, Benjamin M. Quigg, Jr., Esquire, to testify as his witness. Quigg testified that at a March 10, 1970 meeting prior to the execution of the antenuptial agreement the parties disclosed their assets to one another. Quigg also had prepared a document memorializing his meeting with the parties. This document stated that he had suggested that the parties write down the properties which each had disclosed to the other. While

such a writing was never created, each party later signed the antenuptial agreement which clearly stated that "Each has made a complete disclosure to the other of his or her financial condition."

■ While disclosure between the parties need not be exact, it must be precise enough so as not to obscure the general financial resources of the parties. *Geyer, supra.* Hartman alleges that the failure of the parties to reduce to writing their respective financial disclosures clearly and convincingly establishes that no adequate disclosure was made. Such a proposition is not supported by Pennsylvania case law. On the contrary, Pennsylvania cases have found adequate disclosure of assets without their reduction to writing. *See, e.g., Nigro v. Nigro,* 371 Pa.Super. 625, 538 A.2d 910 (1988); *In re Hillegass Estate, supra.* Indeed, the Pennsylvania Supreme Court has found adequate disclosure even in situations where, unlike the present case, the agreement does not recite that full disclosure was made. Thus, the antenuptial agreement in the present case provided for a full and fair disclosure of the general finances of the parties.

■ Hartman next claims a lack of disclosure of the statutory rights which he waived by signing the agreement. The record does not support such an assertion. Rather, the record reflects that the initial draft of the agreement provided for the waiver of statutory rights by only Hartman and not the decedent. Indeed, the March 10 meeting that occurred between Mr. Quigg and the parties was a direct result of Hartman's insistence that the decedent also waive any rights in his estate. Mr. Quigg also testified that each paragraph of the agreement was reviewed, in layman's language, with Hartman, including the provision that he would be giving up any rights to his intended spouse's property. Finally, the fact that Hartman was not represented by independent counsel does not mean that full and fair disclosure was not made. Review by independent counsel is not required. *Simeone, supra.* Thus, the evidence supports the trial court's finding that full and fair disclo-

sure was made to Hartman in regard to his statutory rights.

Hartman's final claim regarding the antenuptial agreement is that it is invalid due to fraud, misrepresentation and failure of consideration. Hartman's argument is that he was induced into signing the agreement by the decedent's promise to devise the residence to him. The only evidence of such a promise is contained in the written memorandum prepared by Mr. Quigg the day after the March 10 meeting with the parties. Mr. Quigg testified that the only discussion, as reflected by the memorandum, was that the decedent was considering the possibility that after the passage of time she might consider leaving Hartman a pecuniary legacy or she might consider the possibility of transferring the property to joint names, or she might consider the possibility of leaving it to him in her will. Obviously, this evidence does not clearly and convincingly establish that such a promise was made. The agreement itself clearly recites that there were no collateral promises made as an inducement to execution. The agreement, signed under seal with the intention of being legally binding on the parties, contained the mutual promises of the parties to waive claims in the other's estate and was thus fully supported by consideration. Thus, the trial court was correct in upholding the validity of the antenuptial agreement in the present case.

Hartman next claims that the trial court erred in disqualifying his testimony pursuant to the Dead Man's Act, *supra*. As stated above, Hartman sought at trial to testify against the antenuptial agreement executed with the decedent. He offered to testify that he did not understand the agreement, did not have the opportunity to review it with counsel, was assured contrary to the agreement that he would get the decedent's house if she died first, and that he did not receive an executed copy of the agreement after appearing before a notary public. Hartman claims that such testimony should have been permitted due to the *devisavit vel non* exception to the Act, as well as §§ 2209 and 3121 of the

Probate, Estates and Fiduciaries Code, (the "Probate Code"), 20 Pa.C.S.A. §§ 101–8815.

The Pennsylvania Supreme Court has consistently held that the Dead Man's Act precludes testimony by the surviving spouse against antenuptial and postnuptial agreements. *In re Robinson's Estate*, 222 Pa. 113, 70 A. 966 (1908); *In re Snyder's Estate*, 375 Pa. 185, 100 A.2d 67 (1953); *Estate of Kester*, 486 Pa. 349, 405 A.2d 1244 (1979). As stated by the Pennsylvania Supreme Court in *In re Estate of Stauffer*, 504 Pa. 626, 630–31, 476 A.2d 354, 356 (1984), the purpose of the *devisavit vel non* exception is to allow testimony as to the intent of the testator to be elicited from those who would otherwise be incompetent to testify under the Dead Man's Act. This exception is usually applied when there are competing claimants to an estate. The exception clearly does not apply in the present case. Hartman did not offer to testify as to the decedent's testamentary intent, rather the testimony he sought to present concerned the antenuptial agreement, a civil contract entered into with his wife during her lifetime. Testimony regarding a contractual relationship between the decedent and surviving spouse is clearly proscribed under the Dead Man's Act. *Stauffer, supra*, 504 Pa. at 632, 476 A.2d at 357.

For this same reason Hartman's reliance on § 2209 of the Probate Code ("the surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter") and § 3121 of the Probate Code ("the surviving husband or wife shall be a competent witness as to all matters pertinent to the issue of forfeiture of the right of exemption") is misplaced. As stated above, an antenuptial agreement is a contract. The testimony offered by Hartman concerned the validity of that contract. Hartman's proffered testimony simply did not deal directly with his right to take an elective share of the estate or the forfeiture of the right of exemption. Thus, neither § 2209 nor § 3121 permit Hartman to testify in the present case.

 Having found that the trial court did not err in upholding the validity of the antenuptial agreement or in disqualifying the testimony of Hartman, the Executors' appeal of the October 11 stay order must now be considered.[1] The decision to grant or deny a stay pending appeal is vested in the trial court's discretion and will not be reversed absent a clear abuse of that discretion. *Insilco Corp. v. Rayburn*, 374 Pa.Super. 362, 370, 543 A.2d 120, 126 (1988) citing *In re Upset Sale, Tax Claim Bureau of Berks County*, 505 Pa. 327, 479 A.2d 940 (1984). For the reasons stated below, we conclude that the trial court abused its discretion in granting the stay.

In *Pennsylvania Public Utility Commission v. Process Gas Consumers*, 502 Pa. 545, 553, 467 A.2d 805, 808–809 (1983), the Pennsylvania Supreme Court established that a stay may be granted only if: 1) the petitioner makes a strong showing he is likely to prevail on the merits; 2) the petitioner has shown that he will suffer irreparable injury without the requested relief; 3) the issuance of the stay will not substantially harm other parties; and 4) the issuance of a stay will not adversely affect the public interest. Given the above discussion regarding the substance of this appeal, the first criteria was not met. Hartman alleged in the court below that he would be irreparably harmed if he vacated the premises, was successful on appeal, and later regained ownership of the property by charging it against his elective share. Such a conclusion is in error. Even if Hartman was entitled to his elective share, he would not be able to take the property as his share because he never had ownership rights in the property. *See* 20 Pa.C.S.A. § 2204(c). Additionally, we find that there was substantial harm to the other interested parties since the issuance of the stay precluded the Appellees from selling the property and giving the other heirs of the decedent their rightful inheritance. Finally, the public interests in effectuating the unambiguous testamentary intent of decedents and the

---

**1.** In deciding the appropriateness of the stay, this court did not have the benefit of a trial court opinion written pursuant to Pa.R.A.P. 1925(a).

timely completion of estate administration was contravened by the grant of the stay in this instance.

The order at No. 2509 Philadelphia 1989, directing Hartman to vacate the residence, is affirmed. The order at No. 3037 Philadelphia 1989, granting a stay of the order at No. 2509 Philadelphia 1989, is vacated.

WIEAND, J. files a concurring opinion.

WIEAND, Judge, concurring:

In this case, it is the husband who seeks to invalidate an antenuptial agreement on grounds that his wife failed to make full and fair disclosure of her financial condition. Thus, it is now the husband who is attempting to take advantage of a legal principle which was adopted originally to protect women who were, in earlier times, presumed to be the "weaker" partner in marriage. In my judgment, the old rule should now be discarded as having outlived its usefulness, and the courts should apply to antenuptial agreements, irrespective of gender, traditional principles of contract law. Under traditional principles of contract law, a party is bound by the contents of his or her written agreement in the absence of fraud or mistake. I would decide the instant case consistently with suggestions made by Justice Flaherty in his Dissenting Opinion in *In re Estate of Geyer*, 516 Pa. 492, 533 A.2d 423 (1987), as follows:

Enlightened thinking has accorded equality between the sexes, and, with that equality, it has become inconsistent to preserve special protections that arose in response to perceived inequalities. Certainly, it is not surprising that persons may attempt to reap the benefits of being "equal," while asserting the need for special protections in areas where it would be self-serving to assert certain limited inequalities. To enjoy the benefits of being equal, however, without sharing in the burdens thereof, would be unsupportable. In recognition of this, the law has accorded equal rights to all spouses, without reference to gender. In the context of the instant case, where the validity of an antenuptial agreement is at issue, there is

no basis for allowing to stand an implicit presumption that spouses are of unequal status or not knowledgeable enough to understand the nature of the contracts they enter. If, in fact, there is fraud, misrepresentation, or overreaching, then traditional principles of contract law provide an adequate remedy.

[The majority applies a different rule.] Instead of applying the traditional rule of contract law that binds one to the contents of agreements entered, a contrary rule is applied, which, in effect, binds one only if it is determined that the terms, and effects, of the agreement were fully understood. This is a departure from long-standing, traditional principles of contract law. See *Standard Venetian Blind Co. v. American Empire Insurance*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (failure to read a contract does not warrant avoidance or nullification of its provisions); *Estate of Brant*, 463 Pa. 230, 235, 344 A.2d 806, 809 (1975); *Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co.*, 425 Pa. 430, 432, 229 A.2d 741, 742 (1967) ("Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing."); *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962) (one is legally bound to know the terms of the contract entered). Based upon these principles, the terms of the instant antenuptial agreement should be regarded as binding, without inquiry into whether the significance of the agreement was understood by the party against whom enforcement is sought.

*Id.* 516 Pa. at 516–517, 533 A.2d at 435.

Until recently, the law was clear that an antenuptial agreement was valid and would be enforced unless there was both a failure to make reasonable provision for a spouse and a failure to make full and fair disclosure of a spouse's financial condition. See: *In re Hillegass Estate*, 431 Pa. 144, 244 A.2d 672 (1968). In *In re Estate of Geyer, supra,* three justices opined that disclosure should include

"both the general financial pictures of the parties involved, and evidence that the parties are aware of the statutory rights which they are relinquishing." *Id.*, 516 Pa. at 506, 533 A.2d at 429–430 (footnote omitted). Because this was only a plurality view, it did not alter the prior law, as reviewed and articulated in *Hillegass.*

Despite the fact that Pennsylvania law was controlled by *Hillegass,* the majority of a panel of the Superior Court, in *Simeone v. Simeone,* 380 Pa.Super. 37, 551 A.2d 219 (1988), concluded that the Supreme Court had "expanded the concept of full and fair disclosure to encompass, not only disclosure of assets, but also, disclosure of statutory rights." *Id.*, 380 Pa.Superior Ct. at 43, 551 A.2d at 222. This, in my judgment, was erroneous. The majority in the instant case, although acknowledging that *Geyer* was a plurality opinion, concludes that the opinion by the Superior Court in *Simeone* is precedential and must be followed. I disagree. The law in Pennsylvania is that articulated by the Supreme Court in *Hillegass.* That law was not changed by the Supreme Court in *Geyer* and could not be changed by the Superior Court, an intermediate appellate court, in *Simeone.*

According to existing law, the antenuptial agreement in the instant case is valid if reasonable provision was made for appellant or, if not, execution of the agreement was preceded by a full and fair disclosure of his wife's financial condition. It is clear that reasonable provision was not made for the husband. However, the trial court found that a full and fair disclosure had been made. This finding is supported by competent evidence; and, therefore, the record reveals no basis for disturbing the court's finding.

For the foregoing reasons, I concur in the result. Whether one measures the antenuptial agreement according to traditional principles of contract law or by the law articulated in *Hillegass Estate, supra,* it passes muster. In either event, it is unnecessary to determine whether appellant was specifically advised of the statutory rights which he would otherwise have enjoyed in his wife's estate.