**Apessos Estate**

*John T. Kehner,* for petitioners.
*Bernard C. Bryman,* for respondent, Vasiliki Apessos.

STEFAN, *J.,* July 2, 1992—John P. Apessos died on October 14, 1991. His will dated August 4, 1982, was admitted to probate on November 1, 1991, and letters testamentary were issued to Samuel Levitsky and Saul Levit. On January 2, 1992, the decedent's widow (and second wife), Vasiliki Apessos, filed an election to take against the will. On January 27, 1992, the executors filed a petition to vacate the election on the grounds same is barred by the antenuptial agreement entered into by the decedent and his widow. The petition to vacate avers that the decedent's four children by his first wife, all of whom are beneficiaries under his will, agree with the executors' position.

Mrs. Apessos filed an answer and an amended answer to the petition to vacate the election against the will, in which she alleges the antenuptial agreement was obtained by fraud, misrepresentation and overreaching. On April 6, 1992, the executors filed preliminary objections to the amended answer. On April 15, 1992, Mrs. Apessos filed a second amended answer and new matter to the petition to vacate, to which the executors filed a reply to new matter.

The matter was set down for hearing on June 29, 1992. At that time, a copy of the antenuptial agreement, which was executed by John Apessos and Vasiliki Rousis before a notary public on June 3, 1981, was produced. The agreement provided for Vasiliki Rousis to receive the sum of $50,000 if she and the decedent were living together at the time of his death. The agreement contained mutual waivers of rights to each other's property, including the

right to elect against the other's will. The document also recited, inter alia, that the parties had the opportunity to obtain independent legal advice; that John Apessos had obtained counsel; that Vasiliki Rousis had waived her right to counsel voluntarily and knowingly; that the agreement was not the result of any fraud, coercion, duress or undue influence; and that the parties had made full and fair disclosures of the extent and value of their assets.

Counsel for Mrs. Apessos called the two executors of the decedent's estate as of cross-examination. Samuel Levitsky, Esquire, testified that he had represented the decedent in the past and that he referred the decedent to attorney Levit for the purpose of having an antenuptial agreement prepared. Mr. Levitsky had no knowledge as to the circumstances surrounding the negotiating, drafting or execution of the agreement. Saul Levit, Esquire, testified that he drafted the agreement for Mr. Apessos and that he did not review it with Mrs. Apessos prior to her signing it because he did not represent her. Mr. Levit could therefore offer no testimony as to Mrs. Apessos' understanding as to the terms, meaning or import of the document.

Counsel for Mrs. Apessos then attempted to present the testimony of his client to the effect that she does not speak, write or understand the English language, that she did not understand the meaning of the antenuptial agreement, that no one explained the document to her, that her husband misled her as to what the agreement provided, etc. Opposing counsel objected to Mrs. Apessos' testifying on the grounds that the Dead Man's Act, 42 Pa.C.S. §5930, renders the surviving spouse incompetent to testify. After the court sustained this objection, counsel for Mrs. Apessos had no option but to rest.

The court's ruling vis a vis the Dead Man's Act was mandated by the holding in *Estate of Hartman,* 399 Pa.

Super. 386, 582 A.2d 648 (1990), *allocatur denied,* 527 Pa. 634, 592 A.2d 1301, wherein the Superior Court affirmed the undersigned's decision in a similar fact scenario. In *Hartman,* husband and wife signed an antenuptial agreement waiving all rights against each other's estates. Wife died leaving a will which provided for husband to receive one-half of the proceeds of the sale of her home. Husband wished to testify that the antenuptial agreement was invalid due to its failure to contain a reasonable provision for him, the lack of full and fair disclosure, the absence of a knowing waiver of statutory rights, fraud and failure of consideration. He also wanted to testify that he did not understand the agreement, did not have the opportunity to review it with counsel, was assured contrary to the agreement that he would get the decedent's house if she died first, and that he did not receive an executed copy of the agreement after appearing before a notary public. The Superior Court stated:

"Hartman claims that such testimony should have been permitted due to the *devisavit vel non* exception to the [Dead Man's] Act, as well as sections 2209 and 3121 of the Probate, Estates and Fiduciaries Code, (the Probate Code), 20 Pa.C.S. §§101-8815.

"The Pennsylvania Supreme Court has consistently held that the Dead Man's Act precludes testimony by the surviving spouse against antenuptial and postnuptial agreements. (citations omitted) As stated by the Pennsylvania Supreme Court in *In re Estate of Stauffer,* 504 Pa. 626, 630-31, 476 A.2d 354, 356 (1984), the purpose of the *devisavit vel non* exception is to allow testimony as to the intent of the testator to be elicited from those who would otherwise be incompetent to testify under the Dead Man's Act. This exception is usually applied when there are competing claimants to an estate. The exception

clearly does not apply in the present case. Hartman did not offer to testify as to the decedent's testamentary intent, rather the testimony he sought to present concerned the antenuptial agreement, a civil contract entered into with his wife during her lifetime. Testimony regarding a contractual relationship between the decedent and surviving spouse is clearly proscribed under the Dead Man's Act. *Stauffer, supra,* 504 Pa. at 632, 476 A.2d at 357.

"For this same reason Hartman's reliance on section 2209 of the Probate Code ('the surviving spouse shall be a competent witness as to all matters pertinent to his rights under this chapter') and section 3121 of the Probate Code ('the surviving husband or wife shall be a competent witness as to all matters pertinent to the issue of forfeiture of the right of exemption') is misplaced. As stated above, an antenuptial agreement is a contract. The testimony offered by Hartman concerned the validity of that contact. Hartman's proferred testimony simply did not deal directly with his right to take an elective share of the estate or the forfeiture of the right of exemption. Thus, neither section 2209 nor section 3121 permit Hartman to testify in the present case." *Hartman, supra,* 399 Pa. Super. at 393-4, 582 A.2d at 652-3.

In light of the foregoing, the court's refusal to allow the testimony of Mrs. Apessos was proper and the following order is appropriate.

## ORDER

And now, July 2, 1992, after hearing the petition of the executors to vacate the election filed by Vasiliki Apessos to take against the will of John P. Apessos is granted, and same is hereby vacated.