JUSTICE LEAPHART,
dissenting.
I dissent from the majority opinion which, with no evidence that there was actually a disclosure of assets, finds “fair disclosure.” With this decision, Montana takes a step beyond other jurisdictions in upholding a prenuptial agreement based on a mere recitation of disclosure. This case has none of the circumstances and background that have led other courts to find “general disclosure” based on a recitation of disclosure satisfactory. In so deciding, we establish a policy of inquiry rather than disclosure — we create a duty to question future spouses about their assets and forthrightness, rather than imposing a duty to openly and honestly disclose information to a future spouse.
The dispute in this case could easily have been avoided if the parties had included a list of their assets and values in the prenuptial agreement. However, Eleanor and Everett’s prenuptial agreement contains only a recital of disclosure with no attached list of assets or values. Even though Eleanor had only dated Everett for six months, the District Court concluded that she must have known that he owned his house and had a substantial retirement fund. Based upon these unfounded assumptions, the court concludes that a bare recitation of disclosure constitutes “fair disclosure” under § 72-2-102, MCA. However, in reviewing the facts of the case, there is nothing to support the District Court’s finding that Eleanor had a general knowledge of Everett’s assets.
Eleanor testified that Everett did not disclose his assets to her before signing the prenuptial agreement. The agreement was prepared by Everett’s attorney Mr. Gunderson. Mr. Gunderson testified that at the fifteen minute meeting to discuss and sign the prenuptial agreement, neither he nor Everett disclosed Everett’s assets with Eleanor. Eleanor was not represented by counsel, nor had she seen or read the agreement before the meeting. Eleanor testified that the rights she waived in the prenuptial agreement were not explained to her by Gunderson or Everett. Understandably, she did not comprehend the rights she waived as neither the elective share nor allowances are easily or commonly understood principles. Eleanor had known Everett only six months before she signed the prenuptial agreement the day before she and Everett were married. There is no indication that Eleanor had any independent source of information regarding Everett’s assets. Eleanor had no independent knowledge *282 of Everett’s employment or the intricacies of his employer’s retirement plans.
Eleanor’s education and experience did not provide her with a background in business and investment affairs. She did not complete high school. She has never made more than $5,000 a year. Her employment history as a realtor did not justify the District Court’s assumption that she must have known about Everett’s retirement fund. Even if, as the District Court assumed, she knew that Everett owned his home and had a retirement fund, there is no way she could have had any idea of their values without some disclosure by Everett. The house could have been heavily mortgaged and his retirement fund could have been worth anywhere from a few thousand to several hundred thousand dollars.
Based on these facts, the District Court’s conclusion that “there was at least a general disclosure of the assets and income capacity of Everett prior to marriage which would constitute a ‘fair disclosure’ under Section 72-2-103 MCA,” is not supported by substantial evidence. The District Court, in finding it “inconceivable” that Eleanor did not know that Everett owned his home and that she must have, or should have known, that as a stockbroker for several decades Everett would have a retirement fund, imposes on Eleanor a level of knowledge that is not supported by the evidence, her background or education. In agreeing with this assumption, this Court imposes a requirement that everyone on the threshold of signing a prenuptial agreement have a thorough understanding of professional upper middle class financial planning. In this world of economic and cultural diversity, this is an unreasonable imposition.
The Court errs in affirming that there was a general disclosure of assets, when it is clear from the record there was no disclosure, general or otherwise. Rather, the record reveals nothing more than an unfulfilled recital of disclosure and the District Court’s unreasonable assumption that Eleanor should have known as a matter of general knowledge, that Everett had a retirement fund of unknown value.
In Schumacher v. Schumacher (Wis. 1986), 388 N.W.2d 912, 915, the Wisconsin Supreme Court pointed out that, when the parties to a prenuptial agreement do not fairly and reasonably disclose their actual assets to one another, independent knowledge of one another’s financial status may substitute for fair and reasonable disclosure. Nonetheless, such independent knowledge must be more than a general knowledge of the other’s assets and their value. As an *283 illustration, the court stated that if one party surmises that the other has a pension, that conjecture is not the equivalent of knowing that the other party has both a pension and an annuity plan with a total value in excess of $60,000. Only actual knowledge of these facts, the court emphasized, will suffice.
Montana is now alone in holding that the test of “fair disclosure” can be satisfied with a mere recitation of disclosure in the absence of any financial information from independent sources or other mitigating circumstances. Most courts agree, the disclosure of assets necessary to validate a prenuptial agreement can be general and need not be an exact detailed disclosure. However, disclosure does need to approximate the parties’ net worth so that they can make an intelligent decision regarding the agreement. See, e.g. Nanini v. Nanini (Ariz. Ct. App. 1990), 802 P.2d 438; Friedlander v. Friedlander (Wash. 1972), 494 P.2d 208; Laird v. Laird (Wyo. 1979), 597 P.2d 463. In fact, the case relied on by this Court, the District Court, and Everett’s children, In re Estate of Lopata (Colo. 1982), 641 P.2d 952, 955, states: “Fair disclosure contemplates that each spouse should be given information, of a general and approximate nature, concerning the net worth of the other.” Yet in the instant case, there is no indication that Everett provided any financial information to Eleanor. Rather, the Court has required her to glean this information through her intuition or perhaps through osmosis. Generally speaking, a written disclosure will be the more reliable method.
In Lopata, the court looked at the education, background, and business experience of Mrs. Lopata and found that she was “well versed in day-to-day business affairs and was accustomed to consulting professionals in matters of law, tax, and accounting.” 641 P.2d at 954. Mrs. Lopata had one year of college education, had operated a retail business, participated in an investment club, had her income tax returns professionally prepared, and she had been the administrator of her first husband’s estate. Lopata, 641 P.2d at 954. The court also recognized that adequate provision for her support had been made by the prenuptial agreement and weighed the fairness of that provision in upholding the prenuptial agreement. These circumstances are not present in the instant case. Eleanor’s background is not comparable to Mrs. Lopata’s and if the prenuptial agreement stands, Eleanor gets no support at all from Everett’s estate.
In Lopata, the wife’s testimony regarding disclosure was barred under Colorado’s dead man statute. Lopata, 641 P.2d at 956. Although Montana does not have a dead man statute, the District Court, *284 nonetheless, found that Eleanor’s testimony was not particularly credible because she was the only witness still alive. The irony, of course, is that if there were a written disclosure, the parties and the court would not be put in the position of presenting or relying upon self serving testimony. Under this Court’s holding herein, such disputes will necessarily be resolved through after the fact credibility battles rather than contemporaneous documentation. As it is, Eleanor testified that there was no disclosure and her testimony rebuts any presumption that adheres to the agreement’s bare recitation of disclosure.
The District Court faults Eleanor for conceding in an earlier dissolution proceeding, that the prenuptial agreement was “straightforward and simple.” This Court also finds this concession persuasive in holding that the agreement was not ambiguous. I agree that there was no ambiguity in what the agreement did provide. As Eleanor’s attorney admitted, the agreement straightforwardly applied in the event of death, not dissolution. The problem presented here, however, pertains not to what the agreement says, but rather, what it does not say. It does not say what assets and values are being disclosed.
In sum, our decision applies none of the criteria other courts have considered in determining whether the spouse knew or should have known of the other’s assets, i.e.: a previous business relationship (In re Marriage of Knoll (Or. Ct. App. 1983), 671 P.2d 718; Pajak v. Pajak (W. Va. 1989), 385 S.E.2d 384); evidence of oral disclosure (In re Estate of Hill (Neb. 1983), 335 N.W.2d 750; In re Estate of Hartman (Pa. Super. Ct. 1990), 582 A.2d 648); knowing the person for more than two years before signing an agreement (In re Estate of Stever (Colo. 1964), 392 P.2d 286; In re Parish’s Estate (Iowa 1945), 20 N.W.2d 32; In re Neis’ Estate (Kan. 1950), 225 P.2d 110; Laird, 597 P.2d 463); or living near each other (In re Estate of Broadie (Kan. 1972), 493 P.2d 289; In re Estate of Youngblood (Mo. 1970), 457 S.W.2d 750). Instead, this Court does as no other court has chosen to do. It assumes that a person of limited financial expertise who has known the other party for a mere six months, who has no background in estate matters, is unrepresented by counsel and who has fifteen minutes to read and question the premarital agreement before signing it the day before the wedding, has sufficient knowledge and information to satisfy the requirements of “fair disclosure.”
As we and the District Court recognize, the issue presented by this case could have been easily solved by including a list of assets and their values in the prenuptial agreement. Such a list ensures disclo *285 sure and eliminates the sort of testimony presently confronting us. Without a written list, we must weigh testimony which recalls events from 1981, is self-serving, and only arises upon the death of one of the parties insuring the absence of the deceased party’s testimony. Clearly the preferable policy is to encourage the benedicts of the world to actually disclose their assets and thereby avoid unseemly postmortem battles as to what was or was not disclosed on the threshold of marriage. This Court, however, sends the clear message that an intended spouse, when asked “Have you disclosed all of your finances and assets?” can keep his fingers crossed while responding in the affirmative.
The Court’s holding opens the door to hiding assets from a future spouse. Instead of requiring actual and voluntary disclosure, this holding will require that prospective spouses investigate and inquire as to their future spouse’s financial affairs and holdings. In many instances, the less affluent spouse will not have the sophistication or know-how to make the appropriate inquiries. He/she will thus be left at the mercy of the other spouse’s paying lip service to “fair disclosure” § 72-2-102, MCA, a legal requirement which we have effectively reduced to voluntary compliance.