J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21

2021 PA Super 97

| | | |
|---|---|---|
| JEFFREY BARBER, ADMINISTRATOR OF THE ESTATE OF LINDA LEE JENKINS A/K/A LINDA LEE BARBER, DECEASED, AND ZACHARY BARBER, A MINOR, BY AND THROUGH HIS FATHER AND NATURAL GUARDIAN JEFFREY BARBER | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | No. 684 WDA 2020 |
| v. | : : : : | |
| BRUCE STANKO, NORTH HILLS PHARMACY SERVICES, LLC. PACERCHECK, INC., ET AL. | : : : : : | |
| APPEAL OF: MICHAEL J. PICKETT | : | |

Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 4037 of 2005

| | | |
|---|---|---|
| JEFFREY BARBER, ADMINISTRATOR OF THE ESTATE OF LINDA LEE JENKINS, A/K/A LINDA LEE BARBER, DECEASED, AND ZACHARY BARBER, A MINOR, BY AND THROUGH HIS FATHER AND NATURAL GUARDIAN, JEFFREY BARBER | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | No. 702 WDA 2020 |
| v. | : : : | |
| BRUCE STANKO; NORTH HILLS PHARMACY SERVICES, LLC; PACERCHECK, INC.; ET AL. | : : : | |

J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21

|  | : |  |
| --- | --- | --- |
| APPEAL OF: PINNACLE CAPITAL, LLC | : | |

Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 4037 of 2005

| JEFFREY BARBER, ADMINISTRATOR OF THE ESTATE OF LINDA LEE JENKINS A/K/A LINDA LEE BARBER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
| v. | : | |
| BRUCE STANKO; NORTH HILLS PHARMACY SERVICES, LLC; PAPERCHECK, INC., ET AL. | : | No. 753 WDA 2020 |
| APPEAL OF: SEMPRA FINANCE, LLC. | : | |

Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): 4037 of 2005

| JEFFREY BARBER, ADMINISTRATOR OF THE ESTATE OF LINDA LEE JENKINS A/K/A LINDA LEE BARBER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- | --- |
| v. | : | |
|  | : | No. 754 WDA 2020 |

- 2 -

J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21


BRUCE STANKO; NORTH HILLS      :
PHARMACY SERVICES, LLC;         :
PAPERCHECK, INC., ET AL.        :
                                :
                                :
APPEAL OF: HABITUS FUNDING


Appeal from the Order Entered June 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  4037 of 2005


BEFORE:  STABILE, J., MCCAFFERY, J and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                          **FILED: MAY 14, 2021**

Pinnacle Capital, LLC (Pinnacle), Sempra Finance, LLC (Sempra), Habitus Funding (Habitus) and Michael J. Pickett (Pickett) appeal from the June 22, 2020 order of the Court of Common Pleas of Allegheny County (Allegheny County Orphans' Court) that effectively denied motions to dissolve an injunction involving a January 31, 2020 order requiring all annuity payments to Zachary Barber (Zachary) provided for in its 2005 Settlement Approval Order be paid into court until allegation of statutory violations, forum shopping and fraud presented in the underlying proceeding had been determined.  Pinnacle, Sempra, Habitus and Pickett had purchased, with court approval in Courts of Common Pleas in other counties, payments due from

_____

[*] Retired Senior Judge assigned to the Superior Court.

J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21

some of those annuities that the Allegheny County Orphans' Court order required to be paid into court. In separate appeals filed at different docket numbers,[1] each party claims that the June 22, 2020 order improperly continued the January 31, 2020 "injunction." Pinnacle and Pickett also contend that the Allegheny County Orphans' Court abused its discretion by staying all proceeding in this case until the appeal before this court in a coordinated case (Sempra appeal) has been decided. Sempra and Habitus additionally argue that the court lacked subject matter jurisdiction to enter the January 31, 2020 order based on the coordinate jurisdiction rule and the passage of time. Because the appeals are from the same order and include nearly identical issues and briefs, we *sua sponte* consolidate these matters pursuant to Pa.R.A.P. 513 and address them concurrently.

Because the Allegheny County Orphan's Court was obligated to approve the transfer of structured settlement payment rights created by a 2005 Settlement Approval Order and had continued jurisdiction over it, the January 31, 2020 order was not a preliminary injunction but continued enforcement of

---

[1] Specifically, the appeals are docketed at: 684 WDA 2021 corresponding to J-A09037-21 (Appeal of Pickett); 702 WDA 2020 corresponding to J-A09038-21 (Appeal of Pinnacle); 753 WDA 2020 corresponding to J-A09039-21 (Appeal of Sempra); and 754 WDA 2020 corresponding to J-A09040-21 (Appeal of Habitus).

- 4 -

that order pending its decision. Moreover, the trial court did not abuse its discretion in staying all proceedings until the appeal involving the same subject matter had been decided. As the June 22, 2020 order, from which this appeal is taken, is neither a final order nor the proper subject of an interlocutory appeal as of right, the appeals are not properly before us and we quash.

## I.

While what is before us involves a narrow procedural question involving whether the January 31, 2020 order is a preliminary injunction or an ancillary order continuing the terms of 2005 Settlement Approval Order in place, it is necessary to have an understanding of the requirements that need to be met to transfer payments under the Pennsylvania Structured Settlement Protection Act (SSPA), 40 P.S. §§ 4001-4009, as well as a review of the underlying facts.

## A.

Structured settlements were rare until a series of IRS rulings in the late 1970s declared that periodic payments in structured settlements would not be subject to federal income tax. Congress effectively codified these administrative rulings with the passage of the Periodic Payment Settlement

Act of 1982. *See* PUBLIC LAW 97-473—JAN. 14, 1983.[2] The passage of this Act incentivized plaintiffs to forgo a lump-sum payment in favor of a structured settlement to provide tort victims with long-term economic security by providing guaranteed income with spendthrift protection.

While structured settlements provided those benefits, payees of structured settlements were precluded from securing a lump-sum payment by cashing in their remaining payments to take care of current needs or wants, real or imagined. Like all things involving substantial sums of money and wants and desires, there developed an industry to allow plaintiffs to "change their minds" and transfer their payments to a factoring company who offered less than the present value of those payments. The practice of structured settlement transfers raised a concern that personal injury claimants are being exploited by factoring companies that take advantage of vulnerable and

---

[2] While a personal injury plaintiff who receives a lump sum payment may exclude that payment from taxable income under 26 U.S.C. § 104(a)(2), any future return from the plaintiff's investment of the lump-sum payment is treated as taxable investment income. In contrast, all the structured settlement payments that are received on account of personal injuries are excludable from income such that a structured settlement effectively shelters from taxation the return from the investment of the putative lump-sum payment. *See Western United Life Assurance Company v. Hayden*, 64 F.3d 833, 839 (3rd Cir.1995); *CGU Life Insurance Company of America v. Metropolitan Mortgage & Securities Co., Inc.*, 131 F.Supp.2d 670, 679 (E.D. Pa. 2001).

unsophisticated claimants. ***See Johnson v. Structured Asset Services, LLC***, 148 S.W.3d 711, 728 (Tex.App.2004) ("Because the underlying purpose of a structured settlement is not only to compensate an injured party but also to protect that party from his own improvidence, a number of commentators, courts, and legislatures have become concerned by the growing number of companies, sometimes called 'factoring companies,' that purchase structured settlements from a personal injury victim by paying him immediate cash for the right to future payments under the settlement.").

On account of these concerns, Congress amended the Internal Revenue Code in 2002 to impose "a tax equal to 40 percent of the factoring discount" upon any person or entity "who acquires directly or indirectly structured settlement payments rights in a structured settlement factoring transaction...." 26 U.S.C. § 5891(a).[3] However, a statutory exception to that

---

[3] Pursuant to 26 U.S.C. § 5891, Structured settlement factoring transactions:

> **(a) Imposition of tax.**--There is hereby imposed on any person who acquires directly or indirectly structured settlement payment rights in a structured settlement factoring transaction a tax equal to 40 percent of the factoring discount as determined under subsection (c)(4) with respect to such factoring transaction.
>
> **(b) Exception for certain approved transactions.**—
>
>     **(1) In general.**--The tax under subsection (a) shall not apply in the case of a structured settlement factoring transaction

*(Footnote Continued Next Page)*

tax has been created for any transfer of structured settlement payment rights that is approved in advance by a qualified court order. *See* 26 U.S.C. § 5891(b)(1). To constitute a "qualified order" under Section 5891, the order must expressly find that the proposed transfer does not contravene any federal or state law, regulation or order, and that the sale "is in the best interest of the payee, taking into account the welfare and support of the payee's dependents...." 26 U.S.C. § 5891(b)(2)(A)(i)-(ii). To avoid paying a 40 percent tax on the factoring discount amount, any company wishing to purchase a payee's structured settlement rights must secure a court order concluding that the transfer is in the payee's best interests.

---

in which the transfer of structured settlement payment rights is approved in advance in a qualified order.

   **(2) Qualified order.**--For purposes of this section, the term "qualified order" means a final order, judgment, or decree which—

   **(A)** finds that the transfer described in paragraph (1)--

   **(i)** does not contravene any Federal or State statute or the order of any court or responsible administrative authority, and

   **(ii)** is in the best interest of the payee, taking into account the welfare and support of the payee's dependents[.]

26 U.S.C. § 5891(a), (b)(1), (2)(A)(i)(ii).

Like almost all states, Pennsylvania has adopted the SSPA to functionally allow the transfer of structured settlement payments. It provides, among other things, that, "[n]o transfer of structured settlement payment rights shall be effective ... unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that .... [t]he payee has established that the transfer is in the best interests of the payee or his dependents." 40 P.S. § 4003(a)(3).

It has been said that the SSPA places the common pleas court in "position of a guardian of a person who stands in the presumptive position of the defenseless recipient of a benefit. It is for the Court to determine, as a guardian would, on an independent basis, whether the transaction serves the best interests of an unsophisticated (if not incompetent) person" and "is to ensure that an otherwise financially defenseless and possibly injured individual would receive a regular, sustaining source of income." *In re Jacobs*, 936 A.2d 1156, 1160 (Pa. Super. 2007).

Requiring a judge to serve as guardian to protect the interests places the judge in unfamiliar territory. Generally, the petition to transfer payment is unopposed with plaintiff-payee wanting to transfer payments so that it can receive payments for what he or she considers in its best interests, whether it is or not, and the factoring company wanting it approved so it can make the

most money. That requires the trial judge to make an independent determination of whether the sale is in the best interests of the plaintiff-payee based on economic factors that it is not within its ken and with parties who are not that forthcoming. Moreover, this determination is made even more difficult because the proceedings are non-adversarial, with no factual development and competing positions to inform its judgment as would be the usual. It depends on the forthrightness and good faith of counsel to provide all the information available for the judge to make an informed decision on what is in the best interests of the plaintiff-payee to avoid fraud on the court.

While 40 P.S. § 4003 sets forth several conditions that must be met before a transfer can be approved, other sections are pertinent here. Section 4004 of the SSPA, 40 P.S. § 4004, provides that the petition to transfer structured settlement payments shall be filed where the payee is domiciled; another of those conditions requires that the transfer also must be "expressly approved in writing by ... any court or responsible administrative authority that previously approved the structured settlement." 40 P.S. § 4003(a)(5)(i)(B). This approval is required because they are commonly used to resolve tort claims of minors, as well as adults who have suffered injuries that have rendered them legally incompetent, before any transfer can be effectuated.

Now to the underlying facts.

- 10 -

J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21

**B.**

In 2005, when Zachary was less than three years old, he was in a car crash in which his mother was killed.  Zachary's father, Jeffrey Michael Barber, Jr. (Father) filed a wrongful death lawsuit against the driver in the Court of Common Pleas of Allegheny County on behalf of Zachary and himself.  Father received a lump of $471,950.00, along with various future lump sum payments and monthly income until he reached the age of 40.

Because Zachary was a minor, his settlement had to approved by the Allegheny County Orphans' Court.  On July 6, 2005, the Allegheny County Orphans' Court approved a structured settlement (Settlement Approval Order) for Zachary.  The Settlement Approval Order provided for distribution of approximately $2,700,000.00 to Zachary by Prudential Insurance Company of America and Travelers Life and Annuity in 58 separate payments from February 7, 2020, when he turned 18 until February 7, 2031, when he turned 29.  He also was to receive a balance of $869.00 that was to be placed in a federally insured certificate of deposit until he turned 18 or by further order of court.  (***See*** Settlement Approval Order, 7/06/05, at 2-3).

**C.**

In 2012, Father began selling Zachary's annuities.[4] In total, he sold $1,570,000.00 of the annuities for a total purchase price of $822,673.41. To carry out these transfers, he filed several joint petitions pursuant to the SSPA, 40 P.S. §§ 4001-4009. Father and Pinnacle filed three petitions and Father and Sempra filed one.[5]

---

[4] Father had previously filed four petitions in the Court of Common Pleas of Butler County between 2007 through 2012 seeking the approval of the sale of Father's annuities to Stone Street. Three of the petitions represent that Father would use the money to start a business. Second Amended Petition, 2/02/20, at 11). The fourth petition filed in May 2012 states that Father would use the money to pay off a loan and to make home improvements. (*See id.*). Each of the petitions to sell Father's annuities were granted. (*See id.*). Through those sales, Father depleted most of his structured settlement by the end of 2012. (*See id.*).

[5] Father filed the petitions in his own name and as guardian of Zachary. Section 4003(a) of the SSPA provides in pertinent part that:

> No transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any transferee of structured settlement payment rights unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that … **[t]he payee has received or expressly waived in a separate written acknowledgment signed by the payee, independent legal advice regarding the implications of the transfer, including consideration of the tax ramifications of the transfer.**

*(Footnote Continued Next Page)*

**1.**

In 2012, the first petition seeking to sell Zachary's structured settlement payment was filed by Father and Pinnacle in the Butler County Court of Common Pleas for the transfer of $600,000.00 of payments to Pinnacle for $307,673.41. Father represented that he lived in Butler County. Judge Michael Yaeger of the Butler County Court of Common Pleas denied the petition as not being in Zachary's best interest.

Notwithstanding that the petition was denied in Butler County, 41 days later, Father and Pinnacle filed a nearly identical petition in the Beaver County Court of Common Pleas. In this petition, Father represented that he resided in Beaver County. Neither party informed the court that the earlier petition had been denied by the Butler County Court of Common Pleas. The petition also did not mention that the structured settlement was created by the Allegheny County Orphans' Court 2005 Settlement Approval Order. On May

---

40 Pa.C.S. § 4003(a)(4) (emphasis added). "Payee" is defined as "[a] person domiciled in this Commonwealth who is receiving tax-free payments under a structured settlement and proposes to make a transfer of payment rights thereunder." 40 P.S. § 4002.

Even though there was an apparent conflict between Zachary and Father's interest, Zachary, the payee, was not appointed separate representation in any of proceedings seeking to sell his annuities to fund Father's obligations.

21, 2013, the Beaver County Court of Common Pleas approved the transfer.

The court specifically found, in pertinent part, that:

> (1) the Payee, [Father], as Parent and Natural Guardian of [Zachary], a minor, has established that the transfer is in the best interests of the payee or the payee's dependents;
>
> (2) based on the certification by an attorney for the transferee, and the court having not been made aware of any statute, regulation or order that would be incompatible with the proposed transfer, the transfer will not contravene any applicable federal or state statute or regulation, or the order of any court or administrative authority;
>
> (3) the transfer complies with the remaining requirements of the [SSPA], including Sections 3(a)(2), 3(a)(4), 3(a)(5) and 3(a)(6);
>
> (4) the payments that are to be transferred are designated as follows:  one lump sum payment of $425,000.00 due and payable on February 7, 2020; and one lump sum payment in the amount of $175,000.00 due on February 21, 2020, to Pinnacle's Designated Assignee, Michael J. Pickett[;]
>
> * * *
>
> (5) the payee shall receive from the transferee the amount of $307,673.41, from which no funds are owed for counsel fees, administrative fees, or other costs, fees or expenses.

(Beaver County Order, 5/21/13).  No mention of or approval for this transfer was sought or received from the Allegheny County Orphans' Court.

On January 25, 2016, Beaver County Court of Common Pleas approved another petition to transfer $250,000.00 of Zachary's structured settlement to Habitus, as assignee of Pinnacle, in exchange for the lump sum payment of $175,000.00 to Father, as parent and natural guardian of Zachary.  (***See***

- 15 -

Beaver County Order, 1/25/16). Again, there was no mention in the petition of the Allegheny County Orphans' Court's 2005 Settlement Approval Order and no approval was sought or received from the Allegheny County Orphans' Court.

**2.**

On February 5, 2018, Sempra and Father filed a joint petition in Butler County Court of Common Pleas pursuant to the SSPA seeking to transfer a $720,000.00 payment owned by Zachary to Sempra for $275,000.00 (Butler County Petition). The Butler County Petition did not mention that the structured settlement was created by the Allegheny County Orphans' Court's 2005 Settlement Approval Order. Father and his wife testified at a hearing on the petition that Zachary was aware of the petition and approved of its terms. On April 18, 2018, Judge Yeager entered an order approving the Butler County Petition, finding, in relevant part:

> 3. [Father] has established the Proposed Transfer is in his best interest or in the best interest of Zachary [and his] dependents, if any.
>
> * * *
>
> 9. Pursuant to 26 U.S.C. § 5891, the Proposed Transfer does not contravene any federal or state statute or the order of any court or responsible administrative authority, and is in the best interest of Zachary [], taking into account the welfare and support of his dependents, if any.

10. Sempra intends to assign all of its rights, title and interest in and to the Assigned Payments to Habitus Funding ("Assignee").

\* \* \*

J. In consideration for the Assigned Payments, Sempra shall remit a check in the amount of $340,000.00 made payable to "Jeffrey Barber and his attorneys, Lutz & Pawk".

K. This order is a "Qualified Order" within the meaning of 26 U.S.C. § 5891.

(Butler County Order, 4/18/18).

The transfer was approved based on Father's representations that no other payments had been sold, that he would transfer certain real property and oil and gas rights to Zachary in exchange for the annuity, that Zachary was aware of the petition and conditioned on Father retaining counsel to prepare a trust for Zachary to ensure he was protected. No approval was sought from the Allegheny County Orphans' Court.

**D.**

On January 31, 2020, Zachary's paternal grandparents, on his behalf, presented a first emergency motion for rule to show cause in the Allegheny County Orphans' Court. (First Emergency Motion). Contrary to Father's testimony at the March 18, 2018 Butler County hearing that Zachary previously was aware of the annuity transfers, Zachary stated that it was not until 2020, shortly before his 18th birthday, that he first learned of the sale of over $1.5 million of his annuities.

- 17 -

J-A09037-21
J-A09038-21
J-A09039-21
J-A09040-21

The First Emergency Motion naming Pinnacle[6] and Father sought to enforce the July 6, 2005 Settlement Approval Order as well as a declaratory judgment[7] that any sale of Zachary's future settlement payments was void and any future payments solely his property. The First Emergency Motion alleged that:

- As a result of his mother's death, Zachary was awarded a confidential seven-figure settlement;

- Father had kept all information about the settlement from Zachary;

- Father has consistently told Zachary that the money Zachary would receive in the settlement would be divided equally between the two of them;

- Father converted Zachary's future $500,000.00 payment into a present payment to himself of $175,000.00 without court approval or involvement;

- Father would attempt to access money belonging to Zachary for his own use and benefit when it became available to him on his eighteenth birthday, February 7, 2020;

- Zachary was in a situation that would lead to irreparable harm if he continued to reside with his father, and therefore had moved to his paternal grandparents' residence;

---

[6] Pinnacle maintains that it did not receive notice of the First Emergency Motion.

[7] While it was called an "emergency petition," it commenced declaratory judgment action. *See* Pa.O.C. Rule 5.1.

- 18 -

- Father has continually refused to share any information with Zachary about the settlement or to give him permission to speak with account managers;

- Although Zachary was to receive substantial monetary payments on February 7 and 21, 2020, Father had represented to him that he will receive $1,500.00 on his eighteenth birthday.

(*See* First Emergency Motion, 1/30/20, at 2, Paragraphs 6, 8-10, 12-13; 3, Paragraphs 17-20). The First Emergency Motion also sought an order "requiring future payments[, including the payments due on February 7 and 21, 2020,] be paid to the Prothonotary of the Court of Common Pleas and be accessed only by Z.B. upon motion to this Honorable Court after he achieves the age of majority." (*Id.* at 3, Paragraph 20).

Because the court "was shocked and seriously concerned about the allegations, which included violations of [statutes], forum shopping, and fraud [,]"[8] it entered an order on January 31, 2020, "out of an abundance of caution for the sole purpose of safeguarding [Zachary's] funds until this matter could be properly adjudicated." (Orphans' Ct. Op., at 6). The order provided:

_____

[8] Pinnacle maintains that the First Emergency Motion did not contain specific allegations of forum shopping and violation of statutes. However, the court wrote its 1925(a) opinion eight months after the January 31, 2020 order was entered and it had read multiple documents. The fact remains that at the time it entered its January 31, 2020 order, the court was shocked and concerned about the First Emergency Motion's allegations, which included fraud and violations of the Allegheny County Orphans' Court's Settlement Approval Order.

> unless and until otherwise ordered by the Court, Prudential Insurance Company of America and Travelers Life & Annuity Company, are hereby ORDERED to deposit with the Prothonotary of the Court of Common Pleas of Allegheny County any amounts payable for the benefit of Z.B., a minor. The Court further ORDERS, upon reaching the age of majority, Z.B. may file a motion seeking release of the funds being held.

(Order, 1/31/2020). The order did not direct the payment of a bond or other security, was entered without a hearing, no findings of fact were made in support of it and no memorandum or opinion was issued. The order had the effect of requiring annuity companies withholding payments to entities who had purchased Zachary's payments due from those annuities.[9]

**E.**

On May 11, 2020, Sempra filed a Butler County petition to enforce the Butler County Court's April 18, 2018 order (Butler County Petition to Enforce),

---

[9] Zachary's grandparents did not serve the parties the First Emergency Motion but, instead, on February 3, 2020, they filed a second emergency petition (Second Emergency Petition) naming Father, Pinnacle and Sempra and seeking an order voiding the May 21, 2013 and January 25, 2016 Beaver County orders, the April 18, 2018 Butler County order, and any other yet undiscovered orders related to Zachary's settlement funds. (Second Emergency Petition, 2/02/20, at 17). On March 13, 2020, Zachary filed a First Amended Petition (Amended Petition) substituting himself for his grandparents and identifying Habitus and Pickett as respondents and assignees of Pinnacle's rights to the transferred structured settlement payments. Pinnacle, Sempra and Pickett filed preliminary objections to the Amended Petition. The preliminary objections and motion to dissolve were scheduled for argument on June 24, 2020.

- 20 -

asking that the Butler County Court of Common Pleas determine whether Father failed to comply with the directives of the Butler County order and, if so, to compel him to do so. (**See** Butler County Petition to Enforce, 5/11/20, at 13). On May 19, 2020, Zachary filed a motion to coordinate the Allegheny County Orphans' Court case with the Butler County case (Motion to Coordinate). On June 5, 2020, after argument, the Allegheny County Orphans' Court granted the Motion to Coordinate and Sempra appealed that order to this court on June 17, 2020.

**F.**

Meanwhile, on May 1, 2020, Pinnacle filed a motion to dissolve injunction pursuant to Rule 1531(c) in which it maintained that what it termed the January 31, 2020 "injunction" had expired by operation of law pursuant to Rule 1531(d) for the failure of the court to hold a hearing and, alternatively pursuant to Rule 1531(b), for failing to order Zachary to post a bond. (**See** Pinnacle's Motion to Dissolve, 5/01/20, at 3-5).[10] Pinnacle also maintained

---

[10] Rule 1531 provides, in pertinent part:

> (b) Except when the plaintiff is the Commonwealth of Pennsylvania, a political subdivision or a department, board, commission, instrumentality or officer of the Commonwealth or of a political subdivision, a preliminary or special injunction shall be granted only if

*(Footnote Continued Next Page)*

that Zachary could not establish he was entitled to injunctive relief. (*See id.* at 5-8). It requested that the order be withdrawn and the annuity payments released. On June 8, 2020, Habitus also filed a motion to dissolve injunction, arguing that the January 31, 2020 interim order had dissolved pursuant to

------

> (1) the plaintiff files a bond in an amount fixed and with security approved by the court, naming the Commonwealth as oblige … ;
>
> (2) the plaintiff deposits with the prothonotary legal tender of the United States in an amount fixed by the court to be held by the prothonotary upon the same condition as provided for the injunction bond;
>
> (c) Any party may move at any time to dissolve an injunction;
>
> (d) An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within five days after the granting of the injunction or within such other time as the parties may agree or as the court upon cause shown shall direct.

Pa.R.C.P. 1531(b)-(d).

Although a motion to dissolve can be filed at any time, and Rule 1531(c) does not limit the grounds for a motion to dissolve an injunction, no such motion is required where the preliminary injunction is granted *ex parte* and no hearing is held, because the injunction dissolves automatically under such circumstances pursuant to Rule 1531(d). *See* 5 Goodrich Amram 2d § 1531(c)1. If the parties wanted to challenge the initial "preliminary injunction," they could have done so by filing an appeal within the proscribed 30 days of its entry. *See Downs v. Smythe*, 701 A.2d 591, 593-94 (Pa. Super. 1997); *see also* Pa.R.A.P. 903.

Rule 1531(d) because no hearing had been held and Zachary had not posted a bond or other security required by Rule 1531(c). (**See** Habitus Motion to Dissolve Injunction, 6/08/20, at 3-4, Paragraphs 18-19). It also maintained that the Amended Petition should be denied. (**See id.** at 4, Paragraph 20). In his response to Pinnacle's motion to dissolve injunction, Zachary argued that the order was not a preliminary injunction, but an order issued pursuant to the Allegheny County Orphans' Court's "inherent power to issue orders necessary to enforce the Settlement Approval Order," and that it "[was] clearly appropriate [and] should remain in place to protect [his] money from being disbursed to an individual in California or a company in the United Kingdom." (Response to Pinnacle's Motion to Dissolve Injunction, 6/8/20, at 2, Paragraphs 7-8).[11]

On June 22, 2020, the Allegheny County Orphans' Court held a telephone status conference with all counsel. During the conference, Zachary's counsel requested that the court enter an order pursuant to Rule

_____

[11] Sempra and Habitus claim it is undisputed that the January 31, 2020 order is a preliminary injunction because Zachary made a "judicial admission" by referring to the order as an injunction in his response. (**See** Sempra's Memo, at 20); (Habitus' Memo, at 14). Our review confirms that Zachary did not make any such admission. He put the word, injunction, in quotation marks and was merely referring to it with the title Pinnacle had given it in its motion to dissolve injunction. Zachary's argument in the response was that it was **not** an injunction.

1701(b)(1)[12] declaring that the court's January 31, 2020 order remain in full force and effect during Sempra's appeal. That day, the court effectively denied the motions to dissolve the injunction by entering an order that "all matters pending before the court are stayed pending the appeal and this court's order dated January 31, 2020 remains in full force and effect.". (Order, 6/22/20).[13]

In its 1925(a) opinion, the Allegheny County Orphans' Court explained that it had issue a stay because:

> When the original Emergency Petition, which is several pages in length and very detailed, was presented to the Court, the Court was shocked and seriously concerned about the allegations, which included violation of statutes, forum shopping, and fraud. The January 31, 2020 Order directing future payments to be made to the Prothonotary (sic) (*i.e.*, Department of Court Records) was issued out of an abundance of caution for the sole purpose of safeguarding the minor's funds until this matter could be properly adjudicated. No entity ever requested a hearing in writing. At a status conference on March 6, 2020, it was agreed, and an Order was issued, setting forth discovery parameters, directing the filing of narrative statements, and scheduling another status conference for late June. Unfortunately, the court system shutdown on March 16th and all matters ground to a halt for several weeks. During this time, Sempra filed the action in Butler County seeking enforcement of the April 18, 2018 Order, which led to the

---

[12] "After an appeal is taken … the trial court or other government unit may … [t]ake such action as may be necessary to preserve the *status quo*[.]" Pa.R.A.P. 1701(b)(1).

[13] On June 23, Habitus filed an opposition to Zachary's proposed order to which Pinnacle, Sempra and Pickett joined.

discussions with Judge Yeager, and the issuance of the June 1, 2020 Order coordinating the actions in Allegheny County. But for that appeal, the June 24, 2020 status conference would have occurred, and this matter would, quite probably, be scheduled for a hearing. The bottom line is that the Court [had] no choice but to maintain the *status quo* pending a decision by the Superior Court.

(Orphans' Court Opinion, 9/21/20, at 6-7).

The parties timely appealed the court's June 22, 2020 order refusing to dissolve the order directing all payments be paid into court.[14, 15] They and the Allegheny County Orphans' Court have complied with Rule 1925. **See** Pa.R.A.P. 1925.

## II.

With that necessary background of the relevant law and facts, we will now address the specific issues in this appeal which center on the Allegheny

---

[14] On August 24, 2020, the Allegheny County Orphans' Court denied Zachary's petition to release payment.

[15] On August 28, 2020, this Court issued rules to show cause why the June 22, 2020 order staying the proceedings pending appeal was an appealable order. In response to the rules, the parties averred that the order is expressly appealable pursuant to 201 Pa. Code. Rule 311(a)(4) because it "grants or denies, modifies or refuses to modify, continues or refuses to continue. or dissolves or refuses to dissolve an injunction[.]" 201 Pa. Code. Rule 311(a)(4) On September 28, 2020, we discharged the rules without ruling on the propriety of the appeals and advised the parties that they should be prepared to address this issue either in their briefs or at argument. (**See** *Per Curiam* Order, at 1).

County Orphans' Court's January 31, 2020 order requiring payments to be made under its 2005 Settlement Approval Order to be paid into court.

The parties contend that the Allegheny County Orphans' Court abused its discretion by not dissolving the January 31, 2020 order requiring payments to be made under the 2005 Settlement Approval Order because that order granted a preliminary injunction without requiring an evidentiary hearing pursuant to Rule 1531(d) or requiring Zachary to post security as required by Rule 1531(b), and the June 22, 2020 order improperly continued that order. Zachary counters that the January 31, 2020 and June 22, 2020 orders did not grant and extend an injunction but, instead, the January 31, 2020 order was an exercise of the Allegheny County Orphans' Court's inherent power to enforce the substantive 2005 Settlement Approval Order until the merits of his petition are determined. As a result, Zachary contends that the June 22, 2020 order is not a final appealable final order, but a stay.[16]

From its 1925(a) opinion, it is apparent that that the Allegheny County Orphans' Court did not consider the January 31, 2020 order to be a preliminary injunction, but merely an order keeping in place its 2005 Settlement Approval

---

[16] "[A]n appeal may be taken as of right from any final order of a government unit or trial court. … A final order is any order that … disposes of all claims and of all parties[.]" Pa.R.A.P. 341(a), (b)(1).

Order until the validity of the Butler and Beaver County orders approving the transfer of Zachary's interests in those payments to Pinnacle and other parties could be determined. It, in effect, protected all the rights of all parties who were making a claim on those funds because there are substantial questions as to the validity of the Butler and Beaver County orders because of questions of statutory violations, forum shopping and fraud.

**A.**

Under the SSPA, "the courts were given the mandate to supervise **all** aspects of settlements in which a minor is a party in interest[.]" ***Power by Power v. Tomarchio***, 701 A.2d 1371, 1374 (Pa. Super. 1997) (emphasis in original); ***see also In re Benninger***, 357 B.R. 337, 351 (Bankr. W.D. Pa. 2006) (the Structured Settlement Approval Act "is designed to protect beneficiaries of structured settlements from being taken advantage of by others.").

To ensure that beneficiaries of structured settlements rights are protected, especially minors, the SSPA requires the approval of the court who initially approved the structured settlement must be obtained before the transfer of any payment is effective. As previously mentioned, 40 P.S. § 4003(a)(5)(i)(B) provides that:

> No transfer of structured settlement payment rights **shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment to any**

**transferee of structured settlement payment rights** unless the payee has filed a petition requesting such transfer and the petition has been granted by final order or decree of a court of competent jurisdiction based on such court's express written findings that:

\*\*\*

(5) If the transfer would contravene the terms of the structured settlement:

(i) the transfer has been expressly approved in writing by:

\*\*\*

**(B) any court or responsible administrative authority that previously approved the structured settlement;** (Emphasis added.)

It appears that in all instances, approval from the court or agency that approved a previous structured settlement is needed because, necessarily, the proposed transfer would be contravention of previous orders; otherwise a petition to transfer benefits would not be needed. Moreover, neither the Butler nor Beaver County courts made any finding that such transfers were not in contravention of the terms of the 2005 Settlement Approval Order. While they included boilerplate language contained in 26 U.S.C. § 5891, this language is found in the section about whether the court's orders were "Qualified Orders" for tax purposes and is not a finding regarding the 2005 Settlement Approval Order. *See* 26 U.S.C. § 5891. This is not surprising

because it appears that neither Butler nor Beaver County were made aware of the 2005 Settlement Approval Order.

Because Section 4003(a)(5)(i)(B) applied and it requires that the court that approved the structured settlement agreement must approve in writing the proposed transfer, the Allegheny County Orphans' Court was required to approve any changes in payments made under the 2005 Settlement Approval Order. *See In re Am. Dredging Co.*, 2011 WL 4971829, at *2 (E.D. Pa. Oct. 18, 2011) (finding that sale of portion of settlement for a lesser lump sum than would have been realized if paid at the set disbursement date "would contravene the terms of that structured settlement agreement. Accordingly, pursuant to the language of the statute, [the court that approved the original settlement] must expressly approve[] in writing the transfer of structured settlement rights before the [another] court may grant its approval.").

Requiring the court that initially approved the structured settlement to approve any change in its terms advances the SSPA's purpose to protect beneficiaries of structured settlements from being taken advantage of by others because those courts were aware of the reasons why a settlement was not paid in a lump sum but structured. Additionally, approvals of the court that initially approved of a structured settlement to a minor are especially important because that court can determine if the transfer of payments would

serve the interest of the minor and order, if necessary, that a guardian represent the minor's interests.

In this case, the Allegheny County Orphans' Court did not approve, as required by 40 P.S. §4003 (a)5(i), any of the transfer of payments purportedly authorized by the Butler and Beaver County courts due to Zachary to Pinnacle, Sempra, Habitus and Pickett, with his Father keeping the proceeds of those sales. Zachary contends that Father fraudulently realized the profits for himself in violation of the 2005 Settlement Approval Order's terms.

In light of these accusations, the Allegheny County Orphans' Court entered "[t]he January 31, 2020 Order directing future payments to be made to the Prothonotary … out of an abundance of caution for the sole purpose of safeguarding the minor's funds until this matter could be properly adjudicated." (Orphans' Court Opinion, 9/20/20, at 6). In other words, it was not issuing a preliminary injunction, but keeping the 2005 Settlement Approval Order in place until it could determine who was entitled to the payments to be made thereunder.[17] ***See Commonwealth v. Shaffer***, 712

_____

[17] Similarly, because the January 31, 2020 order did not overrule the Butler and Beaver County orders, Sempra and Habitus' arguments that it violated the coordinate jurisdiction rule and was barred by the passage of time fail. ***See Ario v. Reliance Ins. Co.***, 980 A.2d 588, 597 (Pa. 2009) ("Pursuant to the coordinate jurisdiction doctrine, judges of equal jurisdiction sitting in the same case should not overrule each other's decisions.") (citation omitted); 42 *(Footnote Continued Next Page)*

- 30 -

A.2d 749, 751 (Pa. 1998) ("[I]t is axiomatic that a court has inherent power to enforce its own orders of court and this court will not interfere with this enforcement absent an abuse of discretion.").[18]

**B.**

Moreover, we note briefly that Pinnacle and Pickett alternatively argue that "Sempra's appeal of the coordination order … did not require the [court] to stay this matter in its entirety." (Pinnacle's Brief, at 26); (*see* Pickett's Brief, at 20).

Rule 1701 provides, in pertinent part, that:

**(a) General rule.**--Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**(b) Authority of a trial court or other government unit after appeal.**--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

---

Pa.C.S. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.").

[18] In any event, this appeal will shortly be moot. Contemporaneous with this appeal, Sempra's related appeal, which resulted in the stay order, is also before this Court for review. Once that decision is issued, the stay will be lifted, and any outstanding issues and arguments will be addressed at that time.

(1) Take such action as may be necessary to preserve the *status quo*[; and]

(2) Enforce any order entered in the matter[.]

**(c) Limited to matters in dispute.**--Where only a particular item, claim, or assessment adjudged in the matter is involved in an appeal … the appeal … shall operate to prevent the trial court … from proceeding further with only such item, claim, or assessment, **unless otherwise ordered by the trial court … as necessary to preserve the rights of the appellant**.

Pa.R.A.P. 1701(a), (b)(1)-(2), (c).

The Allegheny Count Orphans' Court did not abuse its discretion to stay all[19] proceedings to preserve Zachary's rights in the structured settlement.[20] The coordination order from which Sempra appealed, although not directly involving Pinnacle or Pickett, went to the larger issue of whether the Butler and Beaver County orders were effective because Pinnacle and Sempra had not received the approval of the Allegheny Court Orphans' Court as required by 40 P.S. § 4003 (a)(5)(i) before a change in payments set forth in the 2005 Settlement Approval Order can occur, as well as fraud, forum-shopping and fraud on the court. Hence, the Allegheny County Orphans' Court did not abuse

---

[19] In fact, in conformity with the stay, the court denied Zachary's August 24, 2020 request for the release of settlement funds.

[20] "[T]he decision to grant or deny a stay pending appeal is vested in the trial court's discretion, and will not be reversed absent a clear abuse of that discretion." ***Insilco Corp. v. Rayburn***, 543 A.2d 120, 126 (Pa. Super. 1988) (citation omitted).

its discretion in staying all proceedings in this matter, including its January 31, 2020 order that annuity payments be deposited with the Prothonotary, pending full adjudication of all allegations, rather than attempting to address them piecemeal. ***See Insilco Corp.***, ***supra*** at 126.

Accordingly, because the January 31, 2020 order was not a preliminary injunction, the June 22, 2020 order, the order from which this appeal is taken, could not "continue" it, and is neither a final appealable order nor appealable pursuant to 311(a)(4), and we quash.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/14/2021